**SO ORDERED.**

**SIGNED March 12, 2012.**



_____
**HENLEY A. HUNTER**
**UNITED STATES BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

IN RE:
    WILLIAM RAY VANCE, JR.                         CASE NO. 11-81241

**REASONS FOR DECISION**

    The above-captioned Motion To Lift the Automatic Stay is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(G). This Court has jurisdiction pursuant to 28 U.S.C. §1334 and by virtue of the reference of the District Court pursuant to Local District Court Rule 83.4.1 incorporated into Local Bankruptcy Rule 9029.3., and this Court having reviewed the post-hearing briefs, makes the following findings of fact and conclusions of law in accordance with F.R.B.P. 7052. Pursuant to same, the Motion to Lift the Automatic Stay, filed by Carolyn Vance, the Estate of Florence K. Grace (through Carolyn Vance), and Tricom Broadcasting, Inc., to pursue pending state court litigation is GRANTED, with reservations as set forth below.

    This Chapter 13 voluntary petition was filed on September 13, 2011, and shortly thereafter schedules filed, in which debtor lists contingent, unliquidated claims against the Estate of Florence K. Grace (through Carolyn Vance) in an unknown amount, and against that Estate to recover executor fees in the amount of $29,950.00. The schedules also list the Estate of Florence K. Grace (through Carolyn Vance) and Carolyn Vance as unsecured, non-priority creditors of an unknown amount. The Claims register reflects, among others, claims filed by Carolyn Vance in the amount of $300,000.00;

by the Estate of Florence K. Grace (through Carolyn Vance) in the amount of $200,000.00, and by Tricom Broadcasting, Inc. in the amount of $50,000.00. These claims arise from the Florence K. Grace probate proceeding commenced in 2009, in the 272nd Judicial District Court of Brazos County, Texas (Civil Action NO. 09-1262-cv-272); a civil action by that Estate against the debtor in County Court at Law No.1 of Brazos County, Texas (Cause No. 12,787-pc-A); and from a civil complaint filed September 12, 2011, by Tricom Broadcasting, Inc. against the debtor in County Court of Law No. 2 of Brazos County, Texas (Civil Action No. 11-2424-cv-CCL2). Consolidation of the two civil actions is possible, pending this Court's ruling on the instant Motion to Lift the Automatic Stay filed by the three claimants: Carolyn Vance, the Estate of Florence K. Grace (through Carolyn Vance), and Tricom Broadcasting, Inc.[1] A hearing was held on this Motion on January 19, 2012, at which counsel to the parties presented oral argument, and briefs were submitted thereafter.

## LAW AND ANALYSIS

The exhibits demonstrate that debtor was removed as executor of the Estate of Florence K. Grace on May 5, 2011 by the probate court, after the estate asserted the above cited civil claim against debtor in the for misapplication/theft of estate property. The Tricom civil action alleges that Debtor, as sole director, president and secretary of Tricom, breached fiduciary duties owed to Tricom by failing to exercise his duty with respect to the care, custody and control of corporate records; failing to deliver the corporate records to the current offices of the corporation; and wasting its assets and/or the conversion of its assets for personal use/benefit. The estate litigation is reportedly ready for trial; while the more recently filed Tricom complaint has not yet been served on the debtor in view of the petition filed in this Court, and movants assert the complaint may be consolidated with the estate litigation. These allegations are restated from the movant's brief to reflect that these are state law causes of action against the debtor, the ultimate resolution of which may later be asserted in this Court, in an Adversary Proceeding, as grounds for non-dischargeability under 11 U.S.C. §523(a)(2), (4) and (6), should the movants prevail in the Texas litigation and seek additional relief in this Court. A review of the litigation, or at least what can be gleaned from an examination of the exhibits to the motion, suggests that the litigation is composite of legal and factual issues arising under state law, expressly that of the

---

[1] Both actions will be hereinafter referred to as "the Texas litigation."

2

State of Texas.

The Motion to Lift the Stay was filed on December 12, 2011, asserting that the Movants, Carolyn Vance, debtor's mother, who is also the successor estate representative of her mother (debtor's grandmother), and Tricom collectively request this Court's approval of all necessary actions to remove all of the foregoing actions to the United States District Court for the Southern District of Texas. Counsel to debtor vigorously objects to the Motion on the basis that the Motion to Lift the Stay seeks not only a ruling on lifting the stay, but rather, "In large measure, the relief from the automatic stay is not as much of an issue as is the determination of whether the Movants' claims are non-dischargeable."[2] Although the parties did argue the timeliness of alternative relief, namely whether the Motion to Lift Stay could be construed a Motion for Extension of Time to file a complaint under Section 523(a)(2) and (4); the Court disagrees that a determination of dischargeability *vel non* is ripe for decision, as no adversary complaint has yet been filed. The Court further finds the following language in the Motion, "Upon the successful removal of same to that Court, the Movants plan to then request the transfer of the same to this Court for "adjudication and/or the **commencement of actions to determine the nondischargeability of the claims asserted in the State Court Litigation pursuant to 11 U.S.C. §523(a)**," warrants the construction of same as a Motion under F.R.B.P. 4007(c), having given debtor adequate notice; and as such, is not untimely filed, being filed well in advance of the expiration of the 60 days from the first setting of the §341 meeting, which would have expired on or about January 2, 2012. (Motion, Doc. #27, ¶15, emphasis supplied.) *See Cardiovascular Surgery of Alexandria, LLC v. Kerry*, 2011 WL 672244 (W.D. La. 2/17/2011); *In re Sherf*, 135 B.R.

---

[2]"Counsel to debtor" in these Reasons refer not to counsel of record, Mr. Thomas C. McBride, but rather to Special Counsel, Mr. Bradley L. Drell. On September 9, 2011, an application was filed to employ Mr. Bradley L. Drell as special counsel for the debtor, which described special counsel's role as "...representation in the settlement of the unsecured nonpriority claims of Carolyn G. Vance, William R. Vance, William R. Vance, Sr., Radio Licensing Inc. and the Estate of Florence K. Grace, all said claims being unknown, contingent, and unliquidated as may be more particularly described in debtors Schedule F, as well as to review and possibly prosecute claims against others listed in Schedule B." Attached to the Application is an engagement contract providing for payment of legal services at hourly rates and expenses. An order approving the application was entered on October 28, 2011, following a hearing on October 27, 2011. (Docs. 12 and 17.)

3

810 (Bankr.S.D.Tex. 1991); *Cf. Covert v. McGuirt*, 879 F.2d 182, 184 (5th Cir. 1989)(While a creditor's generally stated motion for relief lacked specific allegations of fraud and misrepresentation to confer adequate notice of the creditor's cause of action under §523 sufficient to find it timely filed for F.R.B.P. 4007( c) purposes, the Court expressed no opinion on whether a notice based exception to F.R.B.P. 4007( c) exists dependent upon the circumstances and adequacy of the notice given debtor.) To the extent that Debtor argues the Motion did not give adequate notice of the grounds for relief under §523, his argument is confounded by the admission that the reason for filing the case was to allow the litigation of same in this, more local, forum.

Counsel to debtor further argues, "If the movants' non-dischargeability claims are still viable (which the Debtor strenuously argues they are not) than the stay should not be lifted and this court should determine the amounts and non-dischargeability of movants' claims."[3] This Court rejects this argument in its entirety. First, the "viability" of the cause of action under Section 523 has absolutely no bearing on the Court's decision whether to lift the automatic stay to allow a state Court action to proceed. Second, the mere fact that a section 523 complaint may be filed in this Court does not automatically confer jurisdiction in this Court to decide the state law causes of action.

The idea that subject matter jurisdiction is somehow conferred upon the Bankruptcy Court merely because the outcome of the state court litigation may bear on the claim/counter-claims asserted in this Court was soundly rejected by the United States Supreme Court in *Stern v. Marshall*, 132 S.Ct.

---

[3] While the body of these Reasons will address why this argument legally fails, the Court must note that the lamentable contradictory positions espoused by this debtor in oral argument are disingenuous at best, and reveal true forum shopping, at worst; albeit, done with full cooperation of counsel to movants, who seeks a removal on grounds of judicial economy. Debtor's counsel suggested in oral argument that the desire of the parties, or at least of the debtor (notwithstanding opposition in the form of an objection and an accompanying memorandum to virtually any aspect of the relief requested) was to file bankruptcy and then remove the actions to the bankruptcy court, where the dischargeability issues could be more conveniently litigated. Although this "convenience" argument is wrapped in judicial economy, it is allegedly rooted in debtor's inability to fund his representation in the Texas courts, where he has not paid his attorney. Further, since he owes his Texas counsel money, the latter is listed as a creditor (and thus disqualified to continue to represent debtor), counsel to debtor and counsel to movants suggest the convenience of forcing the parties to litigate all state law causes of action in a forum of the debtor's choice, a result of debtor's self-inflicted conflict conundrum.

4

2594, 180 L.Ed.2d 475 (June 23, 2011), wherein the Court concluded that the bankruptcy courts have no constitutional authority to issue final orders under 28 U.S.C. §157(b)(2)( c), regarding the exercise of jurisdiction over counterclaims by the estate against persons filing claims against the estate, when those claim/counter-claims are state law cause of action not arising under the Bankruptcy Code.[4] The Constitutional restraints on the Bankruptcy Court's jurisdiction is inescapable with regard to "related to" jurisdiction under 28 U.S.C. §1334. While the Bankruptcy Court has no jurisdiction to rule on the merits of the state law causes of action, the Bankruptcy Court, through the United States District Court, has sole jurisdiction over the Bankruptcy estate and may issue a final ruling on the dischargeability of the claims ultimately resulting from the state court's final judgment creating same. In this Court, an adversary proceeding alleging non-dischargeability under §523(a)(2) and (4) in a Chapter 13 case is often put on a "procedural hold" pending the outcome of the state court action under which the claim arises, and after final ruling of the state court setting the amount of the claim, the issue of dischargeability of that claim is decided here. The claims asserted in the Texas litigation are solely state law causes of action in probate and corporate law. None of the claims and counter-claims asserted therein arise in or under the Bankruptcy Code.

  Counsel to the Debtor points to the part of the Motion to Lift Stay that anticipates a removal of the Texas litigation to United States District Court, and a potential referral of that action to Bankruptcy Court (or a removal as set forth in F.R.B.P. 9027); however, notwithstanding this Court's discussion of jurisdiction herein, the issue of removal is ripe neither for decision nor mere conjecture, a notice of removal having not yet been filed, and same may not be decided by this Court, but by the United States District Court for the Southern District of Texas. It would be extremely presumptuous for this Court, should it buy into this scheme, to simply assume that the removal, if approved, would result in the referral of this litigation to a bankruptcy court in the Western District of Louisiana. That said, the "long-term" plan of these parties is not before this Court, and is irrelevant to the issue if whether the stay should lift to allow the Texas litigation to proceed.

---

[4] Debtor argues in this brief that he has no counter-claim against movants, making *Stern* inapplicable here; however, not only does this argument fail as his schedules speak for themselves in listing an unliquidated, contingent claims against two of the movants, but it further bears repeating that the Constitutional confines of this Court as described in *Stern* are inescapable.

5

Counsel to Debtor further argues that because the cost of litigating the Texas actions is what caused Debtor to file a Bankruptcy Petition under Chapter 13, the Motion to Lift Stay should be denied. This argument is specious, in that it is always the cost of a debtor's obligations that necessitate the filing of a Bankruptcy petition, be they medical, legal or consumer obligations. The stay imposed by §362(a)(1) in this instance should lift under §362(d)(1), which requires the court to grant relief from the stay as to the debtor (and not in rem) provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay, if this Court finds "cause," including the lack of adequate protection of an interest in property of such party in interest. What constitutes "cause" for lifting the automatic stay must be determined on a case by case basis. *Coleman v. Aegis Mortgage Corp.*, 1999 WL 787401 (N.D.Texas 9/30/99), *citing*, *In re Reitnauer*, 152 F.3d, 341, 343, n. 4 (5th Cir. 8/18/98).

In any case, this Court would normally be inclined to lift the stay to allow parties to proceed with litigation of *state law cause of action not arising under the Bankruptcy code,* when the outcome of same would have a definitive bearing on the claim amount to be paid by the Chapter 13 Trustee, or when the counter-claim to be recovered, having been scheduled as contingent, unliquidated, is ultimately set by state court final judgement. However, that inclination is even further supported by Counsel to Debtor's admission in open Court that the debtor filed the instant petition in this Court as a vehicle to ultimately have this Court decide the entirety of the Texas litigation in this forum, which is local to the debtor. (Hearing transcript, Doc. # 35, pg. 12.) At the same time, Debtor seeks, though his counsel, seeks to impede the movants' right to litigate the unsecured claims by arguing that both that the Texas litigation should not proceed by the lifting of the automatic stay AND that any attempt to litigate the dischargeability of those claims in an Adversary Proceeding are barred by untimeliness under F.R.B.P. 4007( c). He further argued that debtor cannot afford to litigate the state court actions in Texas, that the cost same drove him to filing this petition; and yet, the Chapter 13 Plan proposes to pay the claims of the unsecured class in full, and that but for the expiration of the time to file that complaint regarding the dischargeability of those claim, he would amend the plan.[5]

---

[5]The "cost of the Texas litigation" is the ostensible justification for filing, but the argument is too facile. If debtor can't pay his Texas counsel, how then does he plan to pay his new special counsel to represent the debtor in this Court, *in the "prosecution of the settlement" of the Texas*

Most seriously, this Court notes that the circular reasoning of the Debtor lends heavily toward a finding of bad faith in filing the petition as admitted forum shopping, and as such, reminds Debtor that: "Requiring that debtors act in good faith prevents abuse of the bankruptcy process by debtors whose overridding motive is merely to delay creditors." *In re Little Creek Development*, 779 F.2d 1068, 1072 (5th Cir. 1986). Therefore, bad faith can constitute statutory "cause sufficient to justify the court granting relief to a creditor by lifting the stay. *Id.; Reitnauer*, 152 F.3d at 344 n. 15." *Coleman*, 1999 WL 787401, pg. 2. This impression is scarcely improved by the opinion of Counsel to Debtor that the Texas litigation is not only "vexatious," but nothing more that a "giant family feud that has gotten way out of hand." (Hearing transcript, Doc. # 35, pg. 25.)

Debtor does not disagree with the movants' recitation of the status of the Texas litigation, and finding that same is reportedly ready for trial in state court, and noting the need for a determination of the claims and counter-claims therein, and the lack of subject matter jurisdiction in this Court to do so; the Motion to Lift the Automatic stay to pursue the Texas litigation should be granted.

## CONCLUSION

For the reasons stated herein, the Motion to Lift the Automatic stay is **GRANTED** solely to pursue the Texas litigation, **AND MODIFIED** to allow the parties may proceed to judgment, but reserving the recovery of any money judgment or the dischargeability of same to this Court. As stated herein, insofar as the Motion requests relief to specifically allow movants to file a Notice of Removal of all state court litigation to the United States District Court for the Southern District of Texas, the Court declines to orchestrate the procedures to be followed in another Court. Further, for reasons stated herein, as orally requested at the hearing on this Motion, the Court will construe this Motion as one seeking additional relief under F.R.B.P. 4007( c), and relief thereunder is **GRANTED.** A separate, conforming Order shall enter.

# # #

---

*litigation*? Also conflicting is the fact that the consummation of the confirmed plan hinges in part on the recovery of his claims in the Texas litigation. Although debtor claims he intended to litigate those claims here, his present objections on timeliness grounds reveal questionable motives. How can counsel to debtor be surprised by the movants' potential §523 complaint and the request for F.R.B.P. 4007( c) relief, while arguing that to litigate same was his plan ab initio?

7